UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                   :

NEW YORK METROPOLITAN REGIONAL CENTER,  :
L.P. II,                                                :

                               Plaintiff,          :                20-CV-9477 (JMF)
                                                :

                  -v-                        :        OPINION AND ORDER
                                                :

MAMMOET USA HOLDING, INC.,                :

                               Defendant.       :

-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        The single claim in this case — a breach-of-contract claim brought by New York

Metropolitan Regional Center, L.P. II ("NY Regional") against Mammoet USA Holding, Inc.

("Mammoet Holding"), arising from a doomed project to construct a massive observation wheel

(similar to, but larger than, the London Eye) dubbed the "New York Wheel" — is before the

Court for the second time.  In the earlier suit, which was brought by NY Regional and New York

Wheel Owner LLC ("NYW"), the Court denied Mammoet Holding's motion to dismiss the

claim.  But shortly thereafter, the plaintiffs disclosed that the jurisdictional allegations in their

pleadings had been inaccurate and that, in fact, the Court lacked subject-matter jurisdiction over

NYW's claims, forcing the Court to dismiss the case in its entirety.  Eager to roll on in federal

court, NY Regional filed this action, invoking the Court's diversity jurisdiction pursuant to 28

U.S.C. § 1332.  According to Mammoet Holding, however, this suit suffers from the same fatal

defect as the earlier one — a lack of subject-matter jurisdiction, here derived from the fact that

NY Regional, which is a limited partnership, has one partner who is a New York citizen and

other partners who are foreign citizens, including some who are domiciled in Texas, of which

Mammoet Holding is a citizen.  Mammoet Holding thus moves to dismiss.  *See* ECF No. 19.  In

response, NY Regional argues that jurisdiction is nonetheless proper under Section 1332.  But its

arguments are foreclosed by the plain language of Section 1332 and by binding Supreme Court

precedent holding that, for purpose of diversity, limited partnerships assume the citizenship

statuses of their members.  Accordingly, and for the reasons that follow, Mammoet Holding's

motion to dismiss is GRANTED and, like its precursor, this case is dismissed.[1]

## BACKGROUND

The background of this case is long and complicated, but thankfully it is largely

irrelevant for present purposes.  The New York Wheel project was supposed to produce the

largest observation wheel in the Western Hemisphere, the anchor of a major redevelopment of

the Staten Island waterfront.  Instead, all it has produced is years of litigation.  The litigation

began here in 2017, with a complaint filed by the project's developer, NYW, against the team

hired to design and build the project, including Mammoet Holding.  *See* Complaint, *New York

Wheel Owner LLC v. Mammoet-Starneth LLC*, No. 17-CV-4026 (JMF) (S.D.N.Y. May 30,

2017), ECF No. 1  Two years later, after an aborted settlement and other twists and turns not

relevant here, the litigation involved various claims by NYW and NY Regional (including a

contract claim by NY Regional against Mammoet Holding indistinguishable from the one

pressed in this lawsuit), *see* Third Amended Complaint, *New York Wheel Owner LLC v.

Mammoet-Starneth LLC*, No. 17-CV-4026 (JMF) (S.D.N.Y. Sept. 27, 2019), ECF No. 214, as

well as counterclaims against NYW and third-party claims against the City of New York, *see*

Defendant/Third-Party Plaintiff Mammoet USA North Inc.'s Amended Third-Party Complaint

---

[1]     Mammoet Holding moves in the alternative to stay or dismiss pursuant to *Colorado River
Water Conservation District v. United States*, 424 U.S. 800 (1976).  In light of the Court's
conclusion that it lacks subject-matter jurisdiction, it need not and does not reach that motion.

and Counterclaims, *New York Wheel Owner LLC*, No. 17-CV-4026 (JMF) (S.D.N.Y. Feb. 5, 2020), ECF No. 251.  On August 21, 2020, the Court issued a fifty-four-page Opinion and Order ruling on various motions and cross-motions, including a motion by Mammoet Holdings to dismiss NY Regional's contract claim, which was denied.  *See New York Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 236-38 (S.D.N.Y. 2020).  Shortly thereafter, counsel to NYW and NY Regional made a startling disclosure: that, despite the allegations in their complaints, complete diversity was lacking because (simplifying slightly) NYW had one member who, like Defendant Starneth LLC, was a citizen of Florida and another who, like Defendant Mammoet USA North, Inc., was a citizen of California.  *See* Joint Letter, *New York Wheel Owner LLC*, No. 17-CV-4026 (JMF) (S.D.N.Y. Oct. 22, 2020), ECF No. 300, at 1. "Given this overlapping citizenship," counsel conceded, "no portion of 28 USC § 1332 provides jurisdiction . . . ."  *Id.*  As diversity had been the sole basis for subject-matter jurisdiction, the Court was compelled to dismiss the case in its entirety.  *See* Order, *New York Wheel Owner LLC*, No. 17-CV-4026 (JMF) (S.D.N.Y. Nov. 13, 2020), ECF No. 305.[2]

Two days before the 2017 case was actually dismissed, on November 11, 2020, Mammoet Holding and Mammoet USA North filed suit against NY Regional, NYW, and NYW's parent in New York Supreme Court, seeking compensatory damages against NYW and its parent as well as a declaratory judgment that Mammoet Holding has no guarantor liability to NY Regional.  *See* ECF No. 21-1, at 47-48.  Later that same day, NY Regional filed this lawsuit against Mammoet Holding.  ECF No. 21 ("Jemison Decl."), ¶ 4.  According to the Complaint, NY Regional is an investment partnership, with a general partner ("a Delaware limited liability

---

[2]      NYW's belated disclosure prompted a sanctions motion, which the Court denied in an Opinion and Order entered on June 29, 2021.  *See New York Wheel Owner LLC v. Mammoet Holding B.V.*, No. 17-CV-4026 (JMF), 2021 WL 2660439, at *1 (S.D.N.Y. June 29, 2021).

company whose sole member is a citizen of New York") and an indeterminate number of individual limited partners. ECF No. 1 ("Compl."), ¶ 11. The limited partners are "foreign citizens," but "certain of" them "are green card holders domiciled in Texas." *Id.* ¶¶ 11, 14 n.3. Mammoet Holding (or, more precisely, an entity into which Mammoet Holding merged sometime after 2017) is a Texas corporation with its principal offices in Texas. *Id.* ¶ 13. To the extent relevant here, the Complaint alleges that the Court has subject-matter jurisdiction "because this is an action between 'citizens of different states' (New York and Texas), 'in which citizens or subjects of a foreign state' (NY Regional's limited partners) 'are additional parties' . . . . 28 U.S.C. § 1332(a)(3)." *Id.* ¶ 14. "Alternatively," it continues, the Court has subject-matter jurisdiction "because this is an action between (a) 'citizens of different states' (New York and Texas), 28 U.S.C. § 1332(a)(1), and (b) 'citizens of a State' (Texas) and 'citizens . . . of a foreign state' (NY Regional's limited partners), provided that the green card status of the limited partners residing in Texas is not imputed to NY Regional. 28 U.S.C. § 1332(a)(2)." *Id.* (footnote omitted).

## DISCUSSION

Subject-matter jurisdiction is "an unwaivable *sine qua non* for the exercise of federal judicial power." *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990). Indeed, as the parties in this case (and the Court) are painfully aware, "arguments attacking federal jurisdiction" must be considered "whenever they arise," even if the consequences of doing so are "burdensome and costly," and even when doing so would "undermine an expensive and substantially completed litigation." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Moreover, because "federal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress,"

*Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted), it is "well established . . . that federal jurisdiction is not to be extended beyond the scope permitted by a strict construction of the statute upon which it rests." *Kresberg v. Int'l Paper Co.*, 149 F.2d 911, 913 (2d Cir. 1945); *see, e.g.*, *Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("The policy of the [diversity] statute calls for its strict construction."); *see also Romanella v. Hayward*, 114 F.3d 15, 16 (2d Cir. 1997) (stating that a court should "strictly construe the diversity statute . . . even where the Congressional rationale for not providing for diversity jurisdiction is . . . [not] clear").

Here, it is undisputed that the only potential source of federal subject-matter jurisdiction is diversity of citizenship pursuant to Section 1332(a).  *See* Compl. ¶ 14.  As relevant, Section 1332(a) provides for jurisdiction over "all civil actions where the matter in controversy exceeds" a certain sum (clearly met here) "and is between":

(1)  citizens of different States;

(2)  citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

(3)  citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4)  a foreign state . . . as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).  NY Regional relies primarily on Section 1332(a)(3), contending that the case is between "citizens of different States" (New York and Texas) "in which citizens or subjects of a foreign state" — namely, NY Regional's limited partners — "are additional parties."  ECF No. 22 ("Pl.'s Opp'n"), at 1-9; *see also* Compl. ¶ 14.  "In the alternative," it contends that diversity exists "under a combination of Sections 1332(a)(1) and (a)(2)."  Pl.'s

Opp'n 1; *see id.* at 9-17; *see also* Compl. ¶ 14.  That is, Section 1332(a)(1) applies insofar as NY

Regional "is a New York citizen (by virtue of its general partner)," and Section 1332(a)(2)

applies insofar as NY Regional is a foreign citizen (by virtue of its foreign partners).  Pl.'s Opp'n

10.  Taken together, NY Regional asserts, the two subsections "account for the citizenship of all

its partners."  *Id.*  The Court will address each theory in turn.

## A.  Section 1332(a)(3)

NY Regional's primary theory of diversity jurisdiction is that this case is "between

citizens of different States" (because NY Regional's general partner is a citizen of New York and

Mammoet Holding is a citizen of Texas) "in which" there are "additional parties" (namely, NY

Regional's limited partners) who are "citizens . . . of a foreign state."  28 U.S.C. § 1332(a)(3).

As NY Regional concedes, this theory rises or falls on the ability to treat "each" of its partners

"as a distinct party with its own citizenship, as if the partners were personally named as parties."

Pl.'s Opp'n 3.  Only then can NY Regional's foreign limited partners be viewed as "additional

parties."  NY Regional contends that such an approach is sound because partnerships themselves

"are not considered 'citizens' as that term is used in the diversity statute. . . .  Instead, courts look

past the partnership itself (a legal creation) to the people that compose the partnership (the

partners)."  *Id.* at 2-3 (cleaned up).  By contrast, Mammoet Holding argues that NY Regional's

argument is foreclosed by the Supreme Court's decisions in *Carden v. Arkoma Associates*, 494

U.S. 185 (1990), and *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004), which

stand for the proposition that a partnership "is a single artificial entity" for purposes of the

diversity statute.  *See* ECF No. 20 ("Def.'s Mem."), at 5.  Mammoet Holding is correct.

*Carden* involved a lawsuit between Arkoma Associates ("Arkoma"), a limited

partnership, one limited partner of which who was a citizen of Louisiana, and two defendants

who were also citizens of Louisiana. *See* 494 U.S. at 186. On appeal from a judgment in

Arkoma's favor, the Fifth Circuit affirmed, reasoning that diversity jurisdiction was proper

because Arkoma's citizenship "should be determined by reference to the citizenship of the

general, but not the limited partners." *Id.* at 187. Four Justices would have done the same on the

ground that "limited partners are not real parties to the controversy and, therefore, should not be

counted for purposes of diversity jurisdiction." *Id.* at 198 (O'Connor, J., dissenting). A majority

of the Supreme Court, however, rejected that approach to the issue as misguided:

> The question presented today is not which of various parties before the Court
> should be considered for purposes of determining whether there is complete
> diversity of citizenship, a question that will generally be answered by application
> of the "real party to the controversy" test. There are *not*, as the dissent assumes,
> multiple respondents before the Court, but only *one*: the artificial entity called
> Arkoma Associates, a limited partnership. And what we must decide is the quite
> different question of how the citizenship of that *single artificial entity* is to be
> determined . . . .

*Id.* at 188 n.1 (last emphasis added). The majority then proceeded to "reject the contention that

to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult

the citizenship of less than all of the entity's members." *Id.* at 195. Instead, it "adhere[d] to [its]

oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the

citizenship of 'all the members,' 'the several persons composing such association,' 'each of its

members.'" *Id.* at 195-96 (citations omitted).

The Court reiterated these principles in *Grupo Dataflux*, which involved a lawsuit

between Atlas Global Group L.P. ("Atlas"), a limited partnership created under Texas law, and

Grupo Dataflux ("Dataflux"), a Mexican corporation. After trial, but before judgment was

entered, Dataflux moved to dismiss on the ground that, when the lawsuit was filed, Atlas had had

two Mexican partners, defeating complete diversity. *See* 541 U.S. at 569. The district court

granted the motion, but the Fifth Circuit reversed because, one month prior to trial, the Mexican

7

partners had left the Atlas partnership. *See id.* The Supreme Court reversed in turn, reaffirming the "hornbook" rule that jurisdiction depends on "the state of facts that existed at the time of filing." *Id.* at 570-71. As relevant here, the Court rejected the argument that Atlas's Mexican partners could be viewed as distinct parties and "dropped" under Rule 21 of the Federal Rules of Civil Procedure and *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). "The purported cure" to the lack of diversity, the court explained, "arose not from a change in the parties to the action, but from a change in the citizenship of a continuing party. Withdrawal of the Mexican partners from Atlas did not change the fact that Atlas, *the single artificial entity* created under Texas law, remained a party to the action." 541 U.S. at 575 (emphasis added).

The *Grupo Dataflux* Court reaffirmed that *Carden* established the "rule by which we determine the citizenship of a partnership" and that, with the only parties to the lawsuit being Atlas and Dataflux, it followed "that there were *no* opposing parties who were not co-citizens." *Id.* at 577 n.6. Indeed, the Court continued, "equat[ing] . . . a dropped partner with a dropped party [wa]s flatly inconsistent" with *Carden*'s holding that there was, in that case, only one plaintiff, Arkoma. *Id.* at 578-79. The Court acknowledged that, in determining the citizenship of an artificial entity such as a partnership, it "'looks to' the citizenship of the several persons composing the entity," but emphasized that that is "*for the purpose of determining the citizenship of the entity that is a party, not to determine which citizens who compose the entity are to be treated as parties*." *Id.* at 579 (emphasis added) (citing *Carden*, 494 U.S. at 188 n.1, 195). It then concluded: "There was from the beginning of this action a single plaintiff (Atlas), which, under *Carden*, was not diverse from the sole defendant (Dataflux). Thus, this case fails to present two adverse parties who are not co-citizens." *Id.* (cleaned up).

8

*Carden* and *Grupo Dataflux* thus stand for the (somewhat tautological) proposition that, for purposes of Section 1332(a), a "single artificial entity" party is but one party and that its citizenship — and only its citizenship — matters for purposes of complete diversity.  Put differently, a "single artificial entity" cannot, as NY Regional proposes to do here, be disaggregated, with its members being treated as "distinct part[ies] with [their] own citizenship, as if the partners were personally named as parties."  Pl.'s Opp'n 3.  It follows that NY Regional, the sole plaintiff in this case, is *both* a citizen of New York and a foreign citizen, *cf. Grupo Dataflux*, 541 U.S. at 569 (noting that, at the time of filing, Atlas was "a Mexican citizen" by virtue of its Mexican partners and "*also* a citizen of Delaware and Texas based on the citizenship of its other partners" (emphasis added)), and that NY Regional's limited partners cannot be treated as "additional parties."  By its terms, therefore, Section 1332(a)(3) does not apply.  *See, e.g.*, *Merit Tat Int'l Ltd. v. Wynnchurch Cap. Partners*, 689 F. Supp. 2d 1088, 1091 (N.D. Ill. 2010) ("[Section 1332(a)(3)] does not apply, because . . . [the plaintiff] Merit Tat is a citizen of a foreign state, but it is not an 'additional part[y],' since it is the only plaintiff in the case."); *IGY Ocean Bay Props., Ltd. v. Ocean Bay Props. I Ltd.*, 534 F. Supp. 2d 446, 449 (S.D.N.Y. 2008) (holding, in a case involving dual-citizen plaintiffs, that Section 1332(a)(3) did not apply because the "[p]laintiffs would have to be considered not only as 'additional parties,' but also as citizens of a domestic state as well").

NY Regional's arguments to the contrary rely on statements about the treatment of partnerships that are taken far out of context, *see, e.g.*, Pl.'s Opp'n 3 (quoting *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008), and *Kirschenbaum v. 650 Fifth Avenue*, 830 F.3d 107, 127 n.10 (2d Cir. 2016)), and on an unreasonably narrow reading of *Carden* and *Grupo Dataflux*.  It is true that neither *Carden* nor *Grupo Dataflux* explicitly

addressed Section 1332(a)(3).  But in both cases, the Supreme Court held in no uncertain terms

that where a partnership is a party to a lawsuit, it is but one party for purposes of Section 1332; it

follows that the partnership's partners cannot be treated as "additional parties" for purposes of

Section 1332(a)(3).  Nor does it matter that "the sole issue" in *Grupo Dataflux* was technically

"whether the diversity analysis should focus on the facts at the time of filing or at some later

time."  Pl.'s Opp'n 7.  The Supreme Court's statements quoted above — that, with only Atlas

and Dataflux as parties, "there were *no* opposing parties who were not co-citizens," 541 U.S. at

577 n.6; that "equat[ing] . . . a dropped partner with a dropped party [wa]s flatly inconsistent"

with *Carden*'s holding that there was, in that case, only one plaintiff, *id.* at 578-79; and that

"[t]here was from the beginning of this action" only "a single plaintiff (Atlas)" and a "sole

defendant (Dataflux)," *id.* at 579 — were necessary to its holding that Atlas's post-filing change

in composition could not be equated with the dropping of a dispensable nondiverse party

permitted by Rule 21 and *Newman-Green*.

Nor does the Seventh Circuit's decision in *Tango Music, LLC v. DeadQuick Music, Inc*.,

348 F.3d 244 (7th Cir. 2003), support NY Regional's position.  There, the sole plaintiff was a

limited liability company or LLC (for which the same rules of partnership citizenship apply, *see*

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) (Sotomayor,

J.)), the members of which were citizens of New Jersey and the United Kingdom.  *Tango*, 348

F.3d at 245.  One of the defendants was a citizen of Delaware and New York, another of the

United Kingdom citizen, and another of either the United Kingdom or Virginia.  *Id.*  On appeal,

the question was whether the presence on both sides of the case of foreign citizens of the same

country destroyed diversity.  The Court held that it did not, reasoning that Section 1332(a)(3)

"describe[d the] case exactly" and that the statute "does not say ' . . . citizens or subjects of

10

different foreign states.'" *Id.* But *Tango* is readily distinguishable from this case in at least one decisive respect: It did involve "additional parties" because there were, in fact, more than two parties to the case, unlike the situation here. In any event, to the extent that the Seventh Circuit's decision can be read to hold that a single LLC member (or partner) can be treated as an "additional party," that holding did not survive *Grupo Dataflux*, which was decided the following year. Conspicuously, NY Regional cites no case decided after *Grupo Dataflux* in which a court held — even implicitly — that partners or LLC members could be treated as parties distinct from the partnership or LLC itself.[3] That silence is deafening.

In short, NY Regional's reliance on Section 1332(a)(3) for subject-matter jurisdiction is squarely foreclosed by the Supreme Court's decisions in *Carden* and *Grupo Dataflux*.

## B.  Sections 1332(a)(1) and 1332(a)(2)

That leaves NY Regional's "alternative" argument under Sections 1332(a)(1) and 1332(a)(2). *See* Pl.'s Opp'n 9-17. Notably, NY Regional effectively concedes that either subsection, standing alone, would not suffice. That is because Section 1332(a)(1), which provides for jurisdiction in actions between "citizens of different States," does not apply where, as here, one party has citizenship other than citizenship of a state. *See, e.g.*, *Herrick Co.*, 251 F.3d at 322-24 (holding that there was no jurisdiction under Section 1332(a)(1) where one party was a partnership with stateless partners); *see also, e.g.*, *Merit Tat Int'l*, 689 F. Supp. 2d at 1090-91 ("[Section 1332(a)(1)] does not apply because the case is not between 'citizens of different

---

[3]      In *Strategic Turnaround Equity Partners, L.P. v. Fife*, No. 10-CV-11305, 2010 U.S. Dist. LEXIS 63629 (E.D. Mich. June 28, 2010), cited by NY Regional, *see* Pl.'s Opp'n 4-5, the court observed that "in the event one of the submembers" of the plaintiff limited partnership that had United States partners "were a citizen of a foreign state, . . . it *might be possible* that diversity jurisdiction under 28 U.S.C. § 1332(a)(3) would exist," 2010 U.S. Dist. LEXIS 63629, at *26 (emphasis added). Suffice it to say, that hypothetical musing is not a holding.

States.'  Merit Tat is a citizen of a foreign state.").  And Section 1332(a)(2), which provides for

jurisdiction in actions between "citizens of a State and citizens or subjects of a foreign state,"

does not apply where, as here, there are citizens of a state on both sides of the case.  *See, e.g.*,

*Newman-Green*, 490 U.S. at 828 (explaining that "[s]ubsection 1332(a)(2), which confers

jurisdiction in the District Court when a citizen of a State sues aliens only, . . . could not be

satisfied because [one of the defendants] is a United States citizen"); *La. Mun. Police Emps.'*

*Ret. Sys. v. Wynn*, 829 F.3d 1048, 1056 (9th Cir. 2016) ("Because there are American citizens on

both sides of the case, jurisdiction cannot be grounded in § 1332(a)(2).").  Instead, NY Regional

argues that the Court has jurisdiction based on "a combination of Sections 1332(a)(1) and

(a)(2)."  Pl.'s Opp'n 10.

NY Regional cites, and the Court has found, no authority for the theory that a federal

court can slice and dice a single-artificial-entity party and mix and match different subsections of

Section 1332 to exercise jurisdiction over a case that would not otherwise fit within any one of

the subsections.  But the Court need not and does not decide whether such a creative theory

could ever fly because Section 1332(a)(2) would not support jurisdiction even if NY Regional's

New York citizenship could be ignored, as it proposes.  That is because the statute explicitly

provides that "district courts shall *not* have original jurisdiction under this subsection of an action

between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted

for permanent residence in the United States and are domiciled in the same State."  28 U.S.C.

§ 1332(a)(2) (emphasis added); *see also, e.g.*, *Saraca Media Grp., Inc. v. Liehong Zhuang*, No.

20-CV-2780 (CM), 2020 WL 4016742, at *2 (S.D.N.Y. July 16, 2020) (explaining rule).  Here,

NY Regional has individual foreign partners who are "green card holders domiciled in Texas,"

Compl. ¶ 14 n.3, the state of which Mammoet Holding is a citizen, *see id.* ¶ 13.  By its terms, therefore, Section 1332(a)(2) does not apply.

In arguing otherwise, NY Regional asserts that, unlike the citizenship of partners, "the green card status and residence of individual partners is [sic] not attributed to the partnership itself."  Pl.'s Opp'n 14.  Once again, however, it fails to cite a single decision supporting that assertion.  The closest NY Regional comes is to quote the truism that "a partnership has the *citizenship* of each of its partners."  *Herrick*, 251 F.3d at 322 (emphasis added).  But that truism says nothing about whether Section 1332(a)(2) applies where an individual partner of a partnership party is a foreign citizen domiciled in the same state as a party on the other side of a case.  Moreover, the Supreme Court itself has described "the rule" more broadly to call for "linking unincorporated entities with their members."  *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (internal quotation marks omitted).  In light of that "rule," if an individual foreign partner cannot bring suit under Section 1332(a)(2) because he or she is domiciled in the same state as the defendant, it follows that the partnership itself cannot either. Notably, the handful of courts that have touched upon this issue have reached precisely that conclusion, albeit in dicta.  *See Shtark Inv. Grp., LLC v. Neviot Nature of Galilee Ltd.*, No. 6:12-CV-1365, 2013 WL 12388577, at *1 (M.D. Fla. Mar. 20, 2013) (stating that jurisdiction would not obtain under Section 1332(a)(2) "if Defendant is an LLC and any of its members are lawful permanent U.S. residents domiciled in Florida" because "there would not be complete diversity with the members of Plaintiff's LLC, who are also Florida citizens"); *see also S Rock Partners, LLC v. Kiselev*, No. 3:17-CV-1670 (CSH), 2018 WL 888725, at *4 (D. Conn. Feb. 14, 2018) (holding that the plaintiff LLC failed to adequately allege its citizenship and citing the resident-

alien rule as a possible consideration); *N. Sails Grp., LLC v. Boards & More GmbH*, No. 3:18-CV-0160 (CSH), 2018 WL 731797, at *4 (D. Conn. Feb. 6, 2018) (same).

Without any case to support its argument, NY Regional seizes on a 2011 amendment to Section 1332(a)(2).  Until the amendment, the statute had included a clause — known as the "Deeming Clause" — providing that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled."  Pub. L. No. 100-702, § 203(a), 102 Stat. 4642, 4646 (1988) (emphasis added).  As NY Regional argues, "[t]his meant that, if an individual partner was a green card holder living in a state, that partner was deemed to be a citizen of that state" and, in turn, that citizenship was imputed to the partnership.  Pl.'s Opp'n 15.  (In so doing, NY Regional effectively concedes that, were the Deeming Clause still in effect, Section 1332(a)(2) would not apply.)  But, it continues, the Deeming Clause "was removed . . . in 2011 and replaced with the current language of § 1332(a)(2), which intentionally does *not* say that green card holders living in a state are citizens of that state."  *Id.*  NY Regional strangely stops short of articulating its conclusion, but its implication is clear: By substituting the current language for the Deeming Clause, NY Regional suggests, Congress intended to allow a partnership to bring suit under Section 1332(a)(2) even where, as here, some of its individual partners would be expressly prohibited from doing so because they are foreign citizens domiciled in the same state as a defendant.

NY Regional reads far too much into the 2011 amendment.  Nothing in the new language suggests that Congress intended to carve out a green-card exception to the general rule that, for purposes of Section 1332, partnerships are linked to their partners.  Any doubt on that score is resolved by the legislative history of the 2011 amendment.  The Deeming Clause was originally enacted in 1988 to "eliminate diversity jurisdiction in cases between a citizen and an alien

permanently residing in the same state." *Saadeh v. Farouki*, 107 F.3d 52, 60 (D.C. Cir. 1997). But whereas the Deeming Clause plainly contracted diversity jurisdiction in one respect, confusion arose as to whether it inadvertently expanded jurisdiction in another, namely as to whether it granted jurisdiction over suits between permanent resident aliens and other aliens. *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1073 (2021), *reh'g denied*, No. 20-684, 2021 WL 850718 (U.S. Mar. 8, 2021).  Some courts held that it did, *see, e.g.*, *Singh v. Daimler-Benz AG*, 9 F.3d 303, 306 (3d Cir. 1993), which, in turn, raised serious constitutional questions about whether the statute exceeded the metes and bounds of Article III, *see, e.g.*, *Saadeh*, 107 F.3d at 58.  In response, Congress enacted the Federal Courts Jurisdiction and Venue Clarification Act, Pub. L. No. 112-63, § 101, 125 Stat. 758 (2011), which replaced the Deeming Clause with the current language.

Thus, the express purpose of the 2011 amendment was to ensure that permanent resident aliens "would no longer be deemed to be U.S. citizens for purposes of diversity jurisdiction, thereby avoiding the possibly anomalous results" caused by the 1988 language — namely, allowing suits between two foreign citizens to be heard in federal court pursuant to the diversity statute.  H.R. Rep. No. 112-10, at *7 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576; *see Tagger*, 951 F.3d at 127 ("The legislative history of [the 2011] amendment shows that Congress intended to address the constitutional problems posed by the deeming clause.").  At the same time, the new Section 1332(a)(2) would continue to "provide that the district courts shall not have diversity of citizenship jurisdiction . . . of a claim between a citizen of a state and a citizen or subject of a foreign state admitted to the United States for permanent residence and domiciled in the same state."  H.R. Rep. No. 112-10, at *7, *quoted in Tagger*, 951 F.3d at 126-27.  Thus, the intent of the 2011 amendment was to preserve the limitation inherent in the Deeming Clause,

albeit in a way that would not produce "anomalous results."  Put differently, Congress's intent

was to contract diversity jurisdiction, not to expand it in the manner that NY Regional suggests.

In short, NY Regional's reliance on Section 1332(a)(2) fails.  As that was one of the two

indispensable legs of its "combination" Section 1332(a)(1) and (a)(2) argument, it follows that

that alternative argument for subject-matter jurisdiction cannot stand either.

**CONCLUSION**

Thankfully, here, unlike in the aborted *New York Wheel* case, the jurisdictional

allegations in the Complaint were apparently accurate in the first instance and the question of

subject-matter jurisdiction was thus flagged at the outset.  But the bottom line is the same:

Lacking a valid basis to exercise subject-matter jurisdiction pursuant to Section 1332, the Court

must grant, and therefore does grant, Mammoet Holding's motion to dismiss for lack of subject-

matter jurisdiction.  Accordingly, the case is dismissed without prejudice.  *See, e.g.*, *Katz v.*

*Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (reaffirming that dismissals for lack

of subject-matter jurisdiction must be without prejudice).

The Clerk of Court is directed to terminate ECF No. 19, to enter judgment consistent with

this Opinion and Order, and to close this case.

SO ORDERED.

Dated: August 6, 2021
     New York, New York

                                        JESSE M. FURMAN
                                    United States District Judge